UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| IN RE: THE MATTER OF C F, LLC AS OWNER *PRO HOC VICE* AND OPERATOR OF THE M/V LISA ANN PRAYING FOR EXONERATION FROM OUT LIMITATION OF LIABILITY | CASE NO. 2:19-CV-00154 |
| | JUDGE JAMES D. CAIN, JR. |
| | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Rec. 43) wherein, the Claimants/Defendants in Complaint for Exoneration From or Limitation of Liability, Durward LeBleu and Penny LeBleu ("Claimants"), seek to have this proceeding dismissed. Claimants maintain that there is no genuine factual dispute that Complainant, CF, LLC ("CF") was not the owner of the M/V LISA ANN, nor was CF a bare boat charterer. Claimants contend that because CF is not the owner *pro hoc vice* of the M/V LISA ANN, CF has no legal standing to bring the instant exoneration and/or limitation proceeding pursuant to 46 U.S.C. § 30501, *et seq.*

## FACTUAL STATEMENT

The M/V LISA ANN was one of two boats owned by Leblanc Marine, LLC ("LeBlanc") and used at a construction site within the Rockefeller Refuge/Reserve.[1] The

---

[1] SOF ¶ 2. Rec. 14; Claimants/Defendants' exhibit 3, Cody Fortier Depo. pp. 23:2-7, 23-25, 33:21-25, 34:1; exhibit 2, Grant Guidry Depo. pp. 15, 18:3-10; exhibit 4, Alvin Trahan Depo. pp. 21:15-18, 23-24.

Rockefeller project lasted between six to eight months.[2] CF and LeBlanc bid construction contracts together; only LeBlanc is named on the bids and contracts after the bidding process.[3]

CF, who was owned by Cody Fortier, had two employees at the Rockefeller project site; Grant Guidry, who operates equipment and drives boats, and Alvin Trahan, a supervisor who also did the same.[4] LeBlanc had three to four personnel at the construction site on a daily basis.[5]

CF and LeBlanc had an oral agreement to share each other's boats and equipment at the Rockefeller construction project site; each had two boats at the site. CF employees could use LeBlanc's boats, and LeBlanc employees could use CF's boats. However, LeBlanc employees needed permission from Trahan or Guidry to use any of the boats at the worksite.[6] Mr. Fortier also testified that no money was exchanged for CF's use of LeBlanc's boats.[7] CF and LeBlanc split the profits from the job and theoretically split the expenses.[8]

Historically, the costs of fuel for the boats was split between CF and LeBlanc at a later date.[9] Each individual owner of the boats paid for their own maintenance and repair

---

[2] SOF ¶ 3. Claimant/Defendant's exhibit 2, Guidry Depo., p. 30:13-20; Exhibit 4, Trahan Depo., p. 4:2-17.
[3] SOF ¶ 7. Claimant/Defendant's exhibit 3, Fortier Depo., pp. 4-12, 63-65.
[4] SOF ¶ 8. Claimant/Defendant's exhibit 3, Fortier Depo., p. 15:1-16; Exhibit 4, Trahan Depo., p. 19:3-4, p. 21:5-18.
[5] SOF ¶ 8. Claimant/Defendant's exhibit 3, Fortier Depo. p. 25:9-14, p. 44:3-24.
[6] SOF ¶ 14. Complainant's exhibit B, Alvin Trahan Depo. p. 27:3-14; Complainant's exhibit A, Grant Guidry Depo., pp. 41:24 – 43:7.
[7] SOF ¶ 9. Claimant/Defendant's exhibit 3, Fortier Depo. pp. 25:1-11, 38:4-25, 39:1-19, 43:21-25, 44:1-5.
[8] SOF ¶ 9. Id.
[9] SOF ¶ 11. Claimant/Defendant's exhibit 3, Fortier Depo. pp. 39:12-14, 48:9-24.

for their respective boats.[10] However, if any CF employee damaged a boat which required repairs, CF was responsible for the repair costs.[11]

Both CF and LeBlanc could pick up its own boat at any time and move it with no notice to the other.[12] However, if either CF or LeBlanc removed their equipment from the site, it would have been a violation of the parties' agreement to provide equal equipment.[13] CF and LeBlanc's oral agreement to share the boats allowed any of CF's or LeBlanc's employees to use any of the boats on location.[14] Fortier was not aware if insurance was procured on the M/V LISA ANN, but CF provided its own insurance for its own equipment and boats.[15]

On October 10, 2017, Durward LeBleu, an employee of Sitech,[16] was a passenger on the LISA ANN, a boat owned by LeBlanc.[17] Grant Guidry, an employee of CF, was the driver or operator of the LISA ANN. Mr. LeBleu was being transported between the dock and a barge at the Rockefeller project site.[18] Mr. LeBleu's transportation was arranged by CF supervisor, Alvin Trahan.[19]

On their trip back to the dock, Mr. Guidry was distracted by a fallen tape measure which he attempted to move, consequently causing him to take his eyes off of his course

---

[10] SOF ¶ 12. Complaint/Defendant's exhibit 3, Fortier Depo., pp. 53:18-25, 54:1-17; exhibit 2, Guidry Depo. pp. 31:20-25, 32:1-24.
[11] SOF ¶ 12. Complainant's exhibit C, Cody Fortier Depo. pp. 36:8 – 37:4.
[12] SOF ¶ 13. Complaint/Defendant's exhibit 3, Fortier Depo. pp. 39:23-25, 40:1-21; 33:16-25, 34:1-10.
[13] SOF ¶ 13. Complainant's exhibit C, Fortier Depo. pp 36:8- 37:4, 41:22 – 46:16.
[14] SOF ¶ 14. Complaint/Defendant's exhibit 3, Fortier Depo. pp. 50:9-25, 51:1.
[15] SOF ¶ 15. Complaint/Defendant's exhibit 3, Fortier Depo. p. 51:2-4.
[16] SOF ¶ 16. Complaint/Defendant's exhibit 1, Durward LeBleu Depo. pp. 12:1-25 14:6-15.
[17] SOF ¶ ¶ 1 and 2. Complaint, Rec. 1, ¶ 6; Complaint/Defendant's exhibit 1, LeBleu Depo. pp. 13:25; 18:13-25; 19:1-5; exhibit 2, Guidry Depo. pp. 22-23; Rec. 14; Complaint/Defendant's exhibit 3, Fortier Depo. 23:2-7, 23-25, 33:21-25, 34:1; exhibit 2, Guidry Depo. pp. 15, 18:3-10; exhibit 4, Trahan Depo. pp. 21:15-18, 23-24.
[18] SOF ¶ 18. Complaint/Defendant's exhibit 1, LeBleu Depo. pp. 19-20.
[19] SOF ¶ 17. Complaint/Defendant's exhibit 1, LeBleu Depo. pp. 16, 18:4-19, 19-20.

and inadvertently steer the boat into the bank.[20] The collision with the bank of the canal threw Mr. LeBleu across the cab of the boat causing injury to his leg, arm, and elbow.[21]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[20] SOF ¶ 18. Id.
[21] SOF ¶ 20. Complaint/Defendant's exhibit 1, LeBleu Depo. pp. 21:1-6, 30:14-19.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

CF filed the instant action in this Court asserting that it is the operator and *pro hoc vice* owner of the M/V LISA ANN. CF raises claims for exoneration and limitation of liability under the Limitation Act,[22] as well as an admiralty and maritime claim under the meaning of Federal Rule of Civil Procedure 9(h). The object of the act is to "limit the liability of vessel owners to their interest in the adventure." *The Main v. Williams,* 14 S.Ct. 486 (1894).

"To invoke the benefits of the Limitation of Liability Act of 1851, an entity must be either an actual owner or owner *pro hoc vice* of the vessel at issue . . ." (citations omitted). *Norfolk Dredging Co. v. M/V A/V Kastner,* 264 F.Supp.2d 265, 268 (D.C. Md. 2003). The party seeking the limitation of liability status bears the burden of pleading facts to establish entitlement. *Id.* citing *E.I. Du Pont de Nemours v. Bentley,* 18 F.2d 782, 783 (N.D. N.Y. 1926). Consequently, CF, who is not the owner of the boat, has the burden of proving owner *pro hoc vice.*

---

[22] 46 U.S.C. § 30501 and specifically § 30505.

An owner *pro hoc vice* is entitled to the limitations of the act because there has been a transfer of "dominion and control" over the vessel such as occurs in a bareboat charter. *In the Matter of The American Milling Company, Limited, et al.*, 409 F.3d 1005 (3d Cir. 2005) citing *Petition of the United States*, 259 F.2d 608, 609 (3d Cir. 1958); *In re Complaint for Exoneration From or Limitation of Liability of Shell Oil Co.,* 780 F.Supp. 1086, 1089-90 (E.D. La. 1991). "A bareboat charter requires that the owner relinquish complete exclusive possession, command, and navigation of the vessel to the charterer." *Torch, Inc. Owner of the L/B Torch I, et al., v. Alesich et al.,* 148 F.3d 424, 427 (5th Cir. 1998) citing *Guzman v. Pichirilo*, 369 U.S. 698, 82 S.Ct. 1095 (1962).

In *Torch*, the Fifth Circuit considered the following facts to determine that Torch was a bareboat charter and entitled to the limitations of the act: (1) Torch stored the vessel, (2) Torch provided the crew, (3) Torch provided all necessary repairs and maintenance, (4) Torch listed the vessel as an available asset when bidding for contracts, and (5) Torch provided insurance for the vessel. Thus, the court found that the owner of the vessel had completely and exclusively relinquished possession, command, and navigation of the vessel to Torch.

In *Norfolk*, *supra,* the court listed the following factors to determine if managing agents were entitled to owner *pro hoc vice* status: (1) manning the vessels, (2) victualing the vessels, (3) providing for navigation, (4) procuring and providing deck, engine and cabin stores, (5) maintenance and repairs for hull and machinery, (6) providing spare parts, maintenance and repairs for communication and navigation equipment, and (7) communicating with the owner and the vessel's time charterers. *Id.* at 267. Additionally,

courts look to the degree of autonomy from the actual owners the managers exercise. *Birmingham Southeast LLC, et al v. M/V MERCHANT PATRIOT, ect., et al.,* 124 F.Supp.2d 1327 (S.D. Ga. 2000).

In *Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F.2d 85, 93 (5th Cir. 1981), the court explained further that:

> [t]he bareboat charter is not a device for the conduct of the business of shipping but is instead an instrument designed to vest in one person most of the incidents of ownership in a capital asset of that business, a vessel, while another retains its general ownership and the right of reversion. The bareboat charterer typically is required to carry insurance on the vessel as well as protection and indemnity insurance and crew insurance. Though not essential, a survey of the vessel on delivery and redelivery is customary to determine the condition of the vessel at the beginning of the charter and its condition at the end, so as to fix responsibility for and limit disputes about damage during the charter. Because the charter is for the use of the boat bare, the compensation is for the furnishing only of that asset. The term for a bareboat charter would not be for a single, short voyage. Indeed, the usual single voyage charter or charter for a limited period of time provides for control by the owner. (citations omitted).

CF argues that it exercised such dominion and control over the LISA ANN that it should be entitled to the protections of the Limitation Act. CF asserts that it provided the operators for the LISA ANN, CF navigated the LISA ANN, CF shared fuel costs for the LISA ANN, and generally managed the operation of the LISA ANN.

In this case, CF was not responsible for supplying a crew; both employees of CF and LeBlanc were operators of the LISA ANN. CF did not provide insurance for the LISA ANN. CF was not responsible for the vessel's repair and maintenance, with the exception that if a CF employee caused damage, CF would be responsible for any repair expense. Fuel costs were shared between LeBlanc and CF at a later date thus, CF was not responsible

for the entire cost of the fuel. Even though a CF employee was the operator of the boat (or crew, if you will) during the incident in question, that alone does not ascribe owner status to a party. See *In the Matter of The American Milling Company, Limited, supra.* CF did not make payments for the use of the LISA ANN, and such use was for a limited and short period of time. The Court agrees with the Claimants/Defendants in Limitation that there was a total lack of transfer of ownership responsibilities from LeBlanc to CF with respect to the LISA ANN.

## **CONCLUSION**

For the reasons set forth herein, the Court finds that CF was not an owner *pro hoc vice* of the LISA ANN, and therefore has no standing to assert the protections of the limitation of liability granted by 46 U.S.C. § 30505, *et seq.* Accordingly, the Court will grant Claimants/Defendants' motion for summary judgment and dismiss CF's complaint for exoneration from or limitation of liability with prejudice.

The Court will not dismiss the entire action. As noted by LeBlanc, it has asserted through its answer to the action, its own exoneration from or limitation of liability afforded under the Limitation of Liability Act.[23] Accordingly, the Court will reserve LeBlanc's right to proceed with its claims in this lawsuit.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of February, 2020.



JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**

---

[23] 46 U.S.C.A § 30511.

8